**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **UMIDZHON DADABAEV** | **CASE NO. 1:26-CV-00820 SEC P** |
| **VERSUS** | **JUDGE ALEXANDER C. VAN HOOK** |
| **ELEAZAR GARCIA, ET AL** | **MAGISTRATE JUDGE LEBLANC** |

# REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus (rec. doc. 1) filed by petitioner Umidzhon Dadabaev ("Dadabaev), an immigration detainee in the custody of the Department of Homeland Security / U.S. Immigration and Customs Enforcement ("DHS/ICE"). The Government filed a Response to the Petition on April 27, 2026. Doc. 15. The Petitioner filed a Reply. Doc. 16. The petition is now ripe for review.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of this Court. For the reasons stated below, **IT IS RECOMMENDED** that the matter be **GRANTED.**

## I. BACKGROUND

Dadabaev is a native and citizen of Kyrgyzstan who originally entered the United States at New York, New York, on or about August 18, 2014, as a nonimmigrant B-2 visitor for pleasure with authorization to remain in the United States for a temporary period not to exceed February 17, 2015. Doc. 1, p. 3; *see also* Declaration of Assistant Field Office Director Justin Williams, dated April 16, 2026, doc. 15-1, ¶4. Petitioner remained in the United States beyond February 17, 2015, without authorization from the Immigration and Naturalization Service or its successor, the Department of Homeland Security. *See* Notice to Appear ("NTA") dated April 26, 2019, doc. 15-3. This NTA charged Petitioner pursuant to §237(a)(1)(B) of the Immigration and Nationality Act

("INA"), as amended, in that after admission as a nonimmigrant under §101(a)(15) of the INA, Petitioner remained in the United States for a time longer than permitted. Doc. 15-1, ¶5.

According to his Petition, Dadabaev timely filed an asylum application within a year of his lawful entry on February 4, 2015, based on his minority Uzbek ethnicity and his political opinion in opposition to corruption in the police department, of which he was an officer. Doc. 2, p. 3. Since 2016, Dadabaev has been authorized to work and has timely applied each year to renew his work authorization. Doc. 2-13, ¶ 3.

On June 27, 2017, he appeared for an asylum interview. Doc. 2, p. 3. On May 9, 2019, the USCIS Asylum Office referred his asylum application to the Louisville Immigration Court by the Chicago Asylum Office. *Id*. He appeared before the Louisville Immigration Court for the three scheduled immigration hearings: July 16, 2019, May 30, 2023, and September 14, 2023. *Id*.

On December 18, 2023, the Louisville Immigration Court issued a decision denying Dadabaev's asylum application, as well as his application for Withholding of Removal pursuant to Section 241(b)(3) of the INA, and his application of deferral of removal pursuant to Article III of the Convention against Torture. *See* doc. 15-3. Petitioner was ordered removed to Kyrgyzstan. *Id*. The Petitioner reserved appeal and, on or about January 22, 2024, a case appeal was received by the Board of Immigration Appeals. According to the Respondents, that appeal remains pending.

On or about February 4, 2026, Petitioner was referred to ICE by the Tennessee Highway Patrol during a commercial vehicle inspection. Despite no change in circumstances and despite being stopped numerous times in the past at these checkpoints while performing his job as a truck driver and being permitted to proceed freely, as he is authorized to work pending his immigration case, Dadabaev was taken into ICE custody.

On or about February 11, 2026, Dadabaev filed a motion for a bond redetermination hearing. That hearing was held on February 17, 2026. *See* Order of the Immigration Judge, dated February 24, 2026, doc. 15-4. Dadabaev was represented by counsel, who presented oral argument and presented 600+ pages of evidence, including the following, in support of Dadabaev's position that he is not a flight risk:

> Mr. Dadabaev has resided in the U.S. for twelve years, and resides with his spouse and five children, two of whom are U.S. citizens, in a home he owns at 11503 Vista Club Drive, Louisville, Kentucky 40291. Exhibit 2, Tabs S and U. He is the sole financial earner for his 5 children and spouse. Exhibit 2, Tabs P-U, EE-NN. He is work authorized and has worked for the same employer, Yunus Chalayev, for the past eight years. Exhibit 2, Tabs P, V. Mr. Chalayev, the owner of MC Transportation, a U.S. citizen, has agreed to serve as his obligor and sponsor, has submitted an affidavit committing to ensuring he attend any future court hearing or ICE appointment, will act as the obligor and financial sponsor if required (a USCIS Form I-134 was submitted). Exhibit 2, Tabs V-BB. Petitioner's children attend Louisville Collegiate School, a private school in Louisville, Kentucky, where the Dadabaev family is involved in their children's studies and extracurricular activities. Exhibit 2, Tabs H-U. His son is a senior preparing to graduate with numerous college acceptances. In addition to his consistent employment history, Mr. Dadabaev files his income tax returns, pays property taxes, has had a fixed address in a home he owns for the past 6 years. Exhibit 2, Tabs P-U. He has never been arrested, has no history of immigration violations, no attempts to flee prosecution, entered the U.S. legally and has filed timely change of address forms with the Immigration Court.

Doc. 2, p. 4. The Immigration Judge ("IJ") denied bond, finding Dadabaev a flight risk solely because his appeal was pending before the BIA. *See* doc. 15-4, p. 2. The DHS put forth no evidence in support of its position that Dadabaev was a flight risk, and the IJ did not provide a weighing of the appropriate factors required to be considered at an individualized bond hearing, corroborated in this case by 600+ pages of evidence submitted. The hearing, which is not recorded or transcribed, lasted approximately five (5) minutes. Doc. 2, p. 4. Dadabaev reserved appeal and has appealed to the BIA.

On March 20, 2026, the instant petition was filed, through which Dadabaev seeks an order that he either be immediately released from custody or be given a new "constitutionally compliant bond hearing before a different immigration judge, to provide him with a fair chance to return to his family and lawfully authorized employment while pursuing his statutory rights to asylum and an appeal." Doc. 2, p. 2.

## II. LAW & ANALYSIS

### *A. Screening of Habeas Corpus Petitions*

A district court may apply any or all of the rules governing habeas petitions filed under 28 U.S.C. § 2254 to those filed under § 2241. *See* Rule 1(b), Rules Governing § 2254 Cases in the United States District Courts. Rule 4 of the Rules Governing § 2254 Cases authorizes preliminary review of such petitions, and states that they must be summarily dismissed "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." *Id.* at Rule 4. To avoid summary dismissal under Rule 4, the petition must contain factual allegations pointing to a "real possibility of constitutional error." *Id.* at Rule 4, advisory committee note (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). Accordingly, we review the pleadings and exhibits before us to determine whether any right to relief is indicated, or whether the petition must be dismissed.

### *B. Analysis*

Dadabaev argues his re-detention after release on bond, without any showing of changed circumstances or a pre-detention hearing, violates his substantive and procedural due process rights under the Fifth Amendment, the APA and the *Accardi* Doctrine. Respondents argue there is no jurisdiction because (1) Dadabaev is subject to mandatory detention as an applicant for admission (2) Dadabaev's arguments are merely dressed up attacks on the decision to subject him to removal,

and (3) the Respondents' re-detention or application of 8 U.S.C. § 1225(b) mandatory detention does not violate due process.

***i. The Court has jurisdiction.***

The Court considers its jurisdiction over this case before turning to the merits. *See La. v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024) ("Jurisdiction is always first."). At the outset, the Court disagrees with the Respondents' contention that it lacks jurisdiction under 8 U.S.C. § 1252. The Real ID Act divests federal district courts of jurisdiction to consider challenges to removal orders. 8 U.S.C. § 1252(a)(5) (designating courts of appeals as the sole forums for such challenges via petitions for review); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007). Federal courts also lack jurisdiction to review discretionary decisions of the Attorney General under Section 1226 "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole." 8 U.S.C. § 1226(e); *Zadvydas v. Davis*, 533 U.S. 678, 688, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). These provisions are inapplicable here.

**ii. *Under 8 U.S.C. § 1226(e), the Court retains jurisdiction to review Petitioner's detention as it presents constitutional issues*.**

Section 1226(e) does not bar judicial review where a noncitizen asserts that the factors an Immigration Judge employed in denying his request for release on bond failed to comport with due process. While 8 U.S.C. § 1226(e) purports to strip district courts of jurisdiction over "discretionary" detention decisions, the United States Supreme Court has recognized that § 1226(e) does not preclude the Court's exercise of jurisdiction where a noncitizen raises a constitutional challenge to the bond hearing he received. *Jennings v. Rodriguez*, 583 U.S. 281 (2018). Accordingly, this Court will consider Dadabaev's argument that his re-detention without proof of changed individual circumstances violates his right to procedural due process.

In *Jennings*, the Supreme Court made clear that § 1226(e) "does not preclude challenges to the statutory framework that permits the alien's detention without bail." 583 U.S. at, 295. There, several noncitizens mounted Fifth Amendment challenges to 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), contending that they were entitled to periodic bond hearings during the course of their detention. *Id*. at 286, 312. The Court held that because the noncitizens "contest[ed] the constitutionality of the entire statutory scheme," and because "the extent of the Government's detention authority is not a matter of 'discretionary judgment,' it was able to 'consider the merits of their claims.'" *Id*. at 296.

Dadabaev cites to several courts that have held that § 1226(e) does not bar judicial review where a noncitizen asserts that the factors an Immigration Judge employed in denying his request for release on bond failed to comport with due process. *Miranda v. Garland*, 34 F.4th 338, 345 n.1 (4th Cir. 2022); *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (holding that § 1226(e) "does not limit habeas jurisdiction over constitutional claims or questions of law"); *Mendez Trigueros v. Guadian, et al*., No. 1:26-cv-205, at *3 (E.D. Va. Feb. 18, 2026); *Lozano Rosales v. Simon,* No. 1:26-cv-86, 2026 U.S. Dist. LEXIS 50660 (E.D. Va. Mar. 11, 2026); *Trejo v. Bullock*, No. 3:26-cv-47, 2026 U.S. Dist. LEXIS 43289, at *2 (E.D. Tenn. Mar. 3, 2026) ("[T]his Court's jurisdiction to review Petitioner's bond hearing is limited to whether it satisfied due process or otherwise suffered some defect that rendered it noncompliant with this Court's Order."); *Picado v. Hyde*, No. 26-cv-065-JJM-PAS, 2026 U.S. Dist. LEXIS 27155, at *4 (D.R.I. Feb. 9, 2026) (finding that § 1226(e) does not strip the court of jurisdiction where a noncitizen "argues that the IJ failed to comport with due process requirements when she denied him release on bond"); *Garcia v. Hyde,* No. 25-cv-585-JJM-PAS, 2025 U.S. Dist. LEXIS 253787, at *7 (D.R.I. Dec. 3, 2025) ("[C]ourts

can review the IJ's decision to ensure that it comported with procedural due process requirements.").

**iii. Petitioner is not subject to mandatory detention.**

Respondents do not substantively address Dadabaev's due process argument regarding re-detention after previous release but instead focus almost entirely on the fact that he is in mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). However, the documentation presented by both parties clearly and unquestionably demonstrates that Dadabaev's detention is/was based upon 8 U.S.C. § 1226, not § 1225. The Court wishes to be clear on this point—although the United States Fifth Circuit Court of Appeals decided *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 U.S. App. LEXIS 3899, 2026 WL 323330 (5th Cir. Feb. 6, 2026), and Respondents confusingly claim detention is proper under § 1225(b)(2) while simultaneously conceding that Dadabaev has already received a bond hearing under § 1226, this case is entirely controlled by § 1226. *See Phalita Pun v. Noem*, No. 5:26-cv-534, 2026 U.S. Dist. LEXIS 33697, *4-5 (W.D. Tex. Feb. 18, 2026). Petitioner was charged with removability because "after admission as a nonimmigrant under Section 101(a)(15) of the Act, you have remained in the United States for a time longer than permitted." *See* doc. 2-7, p. 80. The DHS obviously conceded, and the IJ found jurisdiction to conduct a bond hearing as he is in removal proceedings under 8 U.S.C. § 1226.

**iv. Petitioner's civil immigration detention is a violation of procedural due process.**

Finally, to the crux of the issue. It is well settled that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Mathews v. Davis*, 426 U.S. 67, 77, 96 S. Ct. 1883, 48 L. Ed. 2d 478 (1976) ("Even one whose presence in this country is unlawful, involuntary, or transitory is entitled to that constitutional protection."); *see also Trump*

*v. J. G. G.*, 604 U.S. 670, 673, 145 S. Ct. 1003, 221 L. Ed. 2d 529 (2025) (per curiam) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (quotation omitted)).

A period of immigration detention must "bear[] a reasonable relation to the purpose for which the individual was committed." *Demore v. Kim*, 538 U.S. 510, 516-517 (2003). The due process requirement that the nature and duration of confinement bear some reasonable relation to the purpose of the individual's commitment necessarily means the bond decision must be individualized. *D.Y.E.H v. Irwin Detention Center,* No. 7:25-cv-00201, 2026 U.S. Dist. LEXIS 100902 at *14 (M.D. Ga. April 6, 2026). The fact that Dadabaev was afforded a bond hearing "is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Gonzalez v. Joyce,* No. 25 CIV. 8250 (AT), 2025 U.S. Dist. LEXIS 208578, 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025). The bond hearing that occurred in the instant matter did not cure the initial violation of Dadabaev's due process rights.

The record before this Court raises serious concerns as to the constitutional sufficiency of Dadabaev's bond hearing. As far as this Court can discern, the IJ provided no basis whatsoever for his determination that Dadabaev—who has lived in the United States for approximately twelve years without incident and has extensive family and community ties here—is a flight risk. *See Callejas v. Tate*, No. 4:26-cv-768, 2026 U.S. Dist. LEXIS 103964 (S.D. Tex. March 21, 2026). He has complied with all interviews and hearings; he owns a home here; he is the primary financial provider for his five children, two of whom are U.S. citizens, all of whom attend private school, and the oldest, a senior, who is heading to college in the fall.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quotation omitted). "'Procedural due process rules are meant to protect' against 'the mistaken or unjustified deprivation of life, liberty, or property.'" *A. A. R. P. v. Trump*, 605 U.S. 91, 94 (2025) (quoting *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). Due process "is flexible and calls for such procedural protection as the particular situation demands." *Mathews*, 424 U.S. at 334 (internal quotation omitted). To determine whether the application of a specific procedural framework in a given case violates due process and what procedures are in fact due, courts must consider and weigh the various private and public interests at stake. *See id.* at 334-35; *see also Nelson v. Colorado*, 581 U.S. 128, 135 (2017).

These factors, as identified by the Supreme Court in *Mathews v. Eldridge*, are (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Courts have consistently applied the *Mathews v. Eldridge* three-part balancing test in evaluating due-process challenges to the allocation of the burden of proof in the context of immigration bond hearings, and this Court should do so here. *See, e.g., Hernandez-Lara v. Lyons*, 10 F.4th 19, 27-28 (1st Cir. 2021); *Ayobi v. Castro*, 2020 U.S. Dist. LEXIS 264171, 2020 WL 13411861, at *5 (W.D. Tex. Feb. 25, 2020).

***a. Private Interest***

"'The interest in being free from physical detention' is 'the most elemental of liberty interests.'" *Martinez v. Noem*, No. 5:25-CV-01007-JKP, 2025 U.S. Dist. LEXIS 174415, at *2

(W.D. Tex. Sept. 8, 2025) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Dadabaev argues, and the Court agrees, that he acquired "a protected liberty interest in [his] continued liberty," as he has remained un-detained throughout his removal proceedings and there was no significant change in any of his circumstances to warrant his detention and a determination he was a flight risk. The Court concurs with the argument that there is more evidence now that he is *not* a flight risk than there was when he was initially issued a Notice to Appear, placed in removal proceedings, and not issued a warrant for arrest. Here, Dadabaev has resided in the U.S. for twelve years, has been authorized to work for ten years, and has spent seven years since he was placed in removal proceedings on the non-detained docket. *See Ghughunishvili v. Trump*, 3:26-cv-00086-JE-CBW (W.D. La. Mar. 20, 2026) (finding the petitioner "acquired 'a protected liberty interest in [her] continued liberty'" after spending two years released on her own recognizance, and so the Government cannot detain her at a whim).

***b. Risk of Erroneous Deprivation***

Under the second *Mathews* factor, the Court considers "'whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Martinez*, No. 5:25-CV-01007-JKP, 2025 U.S. Dist. LEXIS 174415, at *3 (quoting *Gunaydin v. Trump*, 784 F.Supp.3d 1175, 1187 (D. Minn. 2025)). Requiring Respondents to provide a meaningful individualized bond hearing is of great value because it reduces the probability of needless detention of Dadabaev. As in other recent cases, Dadabaev's hearing provided no real opportunity to demonstrate, nor did it involve an individualized assessment of, whether he is a flight risk. Proving a negative, like risk of flight, can be more difficult than proving a cause for concern. *See Soto-Medina v. Lynch*, 817 F.Supp.3d 612, 626 (W.D. Mich. 2026)(citing *Hernandez-Lara*, 10 F. 4th at 31); *see also Elkins v. United States*,

364 U.S. 206, 218 (1960). The Court finds persuasive Dadabaev's argument that the risk of erroneous deprivation under the current bond procedure is significant and the deprivation Dadabaev faces is severe, such that modest additional procedural safeguards carry high value.

***c. Government's Interest***

Respondents argue the Government's interest is enacting and enforcing its immigration laws and the public interest is prompt execution of removal orders. *See* doc. 15, p. 7. But Dadabaev argues, and this Court agrees, that there is no interest in the prolonged detention of noncitizens who are neither dangerous nor a risk of flight. And in this case, Dadabaev does not have a final order of removal, his appeal has been pending at the BIA for two years without a briefing schedule issued, there is no timetable for how long it will take the BIA to adjudicate his appeal, and so his detention is not temporary. "[T]he government has little legitimate interest in suddenly detaining without a hearing noncitizens whom DHS already determined to be neither a flight risk nor a danger to the community." *Bermeo Sicha v. Bernal*, No. 1:25-cv-00418-SDN, 2025 WL 2494530 at *6 (D. Maine Aug. 29, 2025)(citing *Hernandez-Lara,* 10 F.4th at 32-33); *Saravia v. Sessions*, 280 F.Supp.3d 1168, 1176 (N.D. Cal. 2017) (explaining that "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk"), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). Likewise, there is no public interest in unnecessary detention. Circuits have addressed the significant societal costs associated with unnecessary detention, i.e., the detention of non-citizens who are not shown to be a danger or a flight risk. "[N]oncitizens subject to immigration detention include spouses, children and parents of U.S. citizens, caretakers of children and elderly relatives, and leaders in religious, cultural and social groups." *Hernandez-Lara*, 10 F.4th at 33. "When the Government incarcerates individuals it cannot show to be a poor bail risk for prolonged periods of time…, it separates

families and removes from the community breadwinners, caregivers, parents, siblings and employees." *Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2nd Cir. 2020).

Based on the foregoing, Dadabaev's private interest in his liberty is compelling; the Government's interest in his detention is comparatively slight; and the risk of error flowing from placing the burden on Dadabaev to prove a negative is significant. Thus, on balance, the *Mathews* factors weigh in favor of Dadabaev and a finding that his due process rights were violated in this instance.[1] The Court finds that the Respondents have failed to show that the bond hearing was sufficient to cure the violation of Dadabaev's due process rights that occurred when he was re-detained without a showing of changed circumstances.

Because the Court agrees with Dadabaev that his re-detention violated his procedural due process rights, it declines to address his additional claims.

**C. The remedy for the constitutional violation is release.**

Dadabaev asks to either be immediately released from custody or given a constitutionally compliant, individualized bond hearing before a different IJ. *See* doc. 16, p. 1. While ordering a new bond hearing may be an appropriate remedy in some cases, in light of the specific facts in the instant matter, another bond hearing would be an inadequate remedy to ensure due process is preserved. Dadabaev has already been detained for over six months. Requiring him to endure further detention and the inevitable delay in the provision of another bond hearing risks compounding the constitutional violation. Immediate release is the appropriate remedy. That said, any future attempt to re-detain Dadabaev under Section 1226(a) must comport with due process

[1] This conclusion is based on the specific circumstances of this case that require additional procedural protections to ensure that this petitioner has been afforded the process he is due.

and must involve an individualized bond hearing at which the Government must justify re-detention.

## III. CONCLUSION

For the reasons stated above, Dadabaev's petition states a claim for relief under 28 U.S.C. § 2241. Accordingly, **IT IS RECOMMENDED** that the petition be **GRANTED** and that Respondents be ordered to **RELEASE** Dadabaev from their custody within 48 hours under conditions sufficient to ensure his participation at future removal proceedings.

**IT IS FURTHER ORDERED** that Respondents must release Dadabaev in a public place within the Western District of Louisiana and must notify his counsel of the time and place of release no less than three hours prior to his release from custody.

**IT IS FURTHER ORDERED** that Respondents may not re-detain Dadabaev during the pendency of his removal proceedings absent a pre-detention hearing before an Immigration Judge at which the Government demonstrates, by clear and convincing evidence, that he is a flight risk or a danger to the community. Respondents similarly may not subject Dadabaev to additional conditions of release without a similar hearing at which the Government bears the burden of showing why new conditions are necessary. The Court notes that the fact that Dadabaev's applications for Asylum and Withholding of Removal were denied by an IJ in 2023 cannot, by itself, form the basis for a finding that he is now a flight risk when previously he was not, because Dadabaev has appealed that order and has continued to attend his ICE check-ins and otherwise comply with all conditions of his release in the more than two years since that decision.

Finally, **IT IS ORDERED** that all pending motions be **DENIED** as **MOOT**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to

file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

**THUS DONE AND SIGNED** in chambers this 19th day of August, 2026.

THOMAS P. LEBLANC
UNITED STATES MAGISTRATE JUDGE